UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MICHAEL LEROY CAMPBELL, | Civil Action No.: 4:07-3972-HFF-TER |
| Plaintiff, | |
| -vs- | **REPORT AND RECOMMENDATION** |
| LARRY W. POWERS and OFFICER J. SNIPES, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Spartanburg County Detention Facility. Plaintiff raises a claim under 42 U.S.C. § 1983, complaining that Defendants were deliberately indifferent to his serious medical needs.

Presently before the Court is Defendant's Motion for Summary Judgment (Document # 48). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the dismissal of his claims. Plaintiff timely filed a Response (Document # 54) to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this motion are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

Plaintiff sets forth the following factual allegations in his Complaint:

> On Saturday night, 9-29-07, Officer Snipes denied me a medical request but said he would call the nurse and get me something to help my eyes to stop burning. He later brought me two pills. After about one hour I told him the medicine he gave me made me feel funny. He took it like it was a joke. Officer Snipes said if he gave me the wrong medicine it wasn't his fault because he wasn't even supposed to be giving out the medicine anyway. Mrs. Collins R.N. with Spartanburg County said the medicine they gave me could put me in a coma. I (sic) was a 1000 mg of some kind of blood thinner. 9-29-07 around 11 p.m. my blood sugar (down as low as 13) before leaving to go to the hospital it was at 40 after a sandwich and something in a tube. At hospital it was 45. I was given an I.V. and they drained some blood. I stayed at the hospital from 12 a.m. to 3 p.m. on 9-30-07. 9-30-07 Around 11 p.m. it was at 55 and after a sandwich and the gel it was 64.

Complaint at p. 3. Plaintiff also sets forth in his Complaint his blood sugar levels at various times during the first half of October.

The Spartanburg County Detention Facility (SCDF) is a pretrial detainment facility. Powers Aff. at ¶ 3. Defendant Larry Powers is the Director of the SCDF. Id. at ¶ 1. Powers avers that on September 29, 2007, while passing out medication to the inmates in Pod 3, Officer Joel Snipes asked if any of the inmates in cell 28 took medication. Id. at ¶ 5. Plaintiff requested that the officer look to see if he had medication for his eyes. Id. While the officer was searching through the medication box, inmates on rotation began to get too loud. Id. The officer stopped searching through the medication box, turned around, and instructed the inmates to quiet down. Id. Once the inmates had quieted, Officer Snipes retrieved medication from the box that he believed to be Plaintiff's. Id. Officer Snipes handed Plaintiff a large, oblong, white pill. Id. Plaintiff then swallowed the pill. Id. The officer secured the door and continued to pass out medication. Id.

Over the next several hours, Officer Snipes made several rounds of the housing area. Id. Plaintiff never stopped the officer or made any complaints to him. Id. At 23:10, Plaintiff told Officer Snipes that he did not think he was supposed to have taken that pill. Id. Officer Snipes immediately contacted Nurse Crystal Thompson and informed her that Plaintiff had taken a large, oblong, white pill, which she deduced to be Metformin. Id. Metformin is an oral diabetes medication that helps control blood sugar levels. Id.

Nurse Thompson instructed Officer Snipes to check Plaintiff's blood sugar level through the use of a finger stick. Collins[1] Aff. at ¶ 4. Officer Snipes reported that the finger stick blood sugar level was 32, which is low. Id. Nurse Thompson then went to Plaintiff's housing area and gave Plaintiff Glucose and a sandwich. Id. Approximately ten minutes later, Plaintiff's finger stick blood sugar was 63. Id. Plaintiff was then sent to SRMC for examination and possible treatment. Id. and Ex. A to Collins Aff. He was admitted to SRMC at 00:48 on September 30, 2007. Id.

At SRMC, Plaintiff was treated for hypoglycemia , or low blood sugar. Id. at ¶ 5. During his hospitalization, Plaintiff was noted to be alert and oriented and in no distress. Id. Plaintiff was discharged from SRMC at 14:22 on September 30, 2007, with his blood sugar stabilized and with no follow-up orders other than to inform the medical staff at the SCDF of any future problems. Id. and Ex. A to Collins Aff. Plaintiff's blood sugar dropped again later that evening. Id. at ¶ 6. He was immediately provided instant Glucose and a sandwich, which raised his blood sugar. Id. and Ex. A to Collins Aff.

For the next several months after this incident, the SCDF monitored Plaintiff's blood glucose levels with a finger stick twice daily. Id. at ¶ 7. Collins avers that based on his medical

---

[1]Judy Collins is a Registered Nurse and the Nursing Supervisor at the SCDF.

records, Plaintiff does not appear to have suffered any long term effects from receiving incorrect medication. Id. and Ex. B to Collins Aff.

**III. STANDARD OF REVIEW**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse

party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### B. Legal Analysis Applicable to Pretrial Detainees

The SCDF is a pre-trial detainment facility. Powers Aff. at ¶ 3. Plaintiff was detained at the facility to await the disposition of pending charges. Id. Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### C. Medical Indifference

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs. The undersigned finds that Plaintiff fails to show that Defendants were deliberately indifferent to his

medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening,

and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

The negligent administration of the wrong medicine does not rise to the level of an Eighth Amendment violation or constitute deliberate indifference. See, e.g., Brown v. Briscoe, 998 F.2d 201, 204 (4th Cir. 1993) (upholding sua sponte dismissal of § 1983 claim where nurse administered a tuberculosis inoculation after inmate informed her he had already received one). Here, the record reveals only that Officer Snipes administered the wrong medication to Plaintiff after being distracted by some rowdy inmates. Plaintiff fails to show that the distribution of the wrong medication was anything other than negligence.

Incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence

could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Furthermore, rather than being indifferent about the fact that Plaintiff had been administered the wrong medication, once Plaintiff informed Officer Snipes that he might have taken the wrong pill, Snipes alerted Nurse Thompson of the situation who determined what drug Plaintiff had been given and what steps needed to be taken in response. Snipes checked Plaintiff's blood sugar level and took him to Thompson when the test revealed that his blood sugar level was low. Thompson gave Plaintiff a sandwich and glucose to help raise his blood sugar. Plaintiff was transported to SRMC for further examination and treatment. Plaintiff was treated for hypoglycemia at SRMC and monitored for several hours. When he was released, his blood sugar level was stabilized. However, Plaintiff's blood sugar level dropped later that night and Plaintiff was again given a sandwich and glucose gel, which raised it. The staff at SCDF continued to monitor Plaintiff's blood sugar levels for several months. Plaintiff fails to present sufficient evidence to create an issue of fact as to whether Snipes was deliberately indifferent to his medical needs.

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to

be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).[2]

For these reasons, summary judgment is proper on Plaintiff's claims against Snipes.

Summary judgment is also appropriate as to Plaintiff's claims against Powers. Plaintiff sets forth no specific allegations against Powers in his Complaint. A medical treatment claim cannot be brought against a supervisory official unless the plaintiff alleges that the supervisor was personally connected with a delay or deprivation of treatment. Miltier, 896 F.2d at 854. An employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Fisher v. Washington Metro. Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir.1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F.2d 368 (4th Cir.1984). Plaintiff fails to come forth with specific facts to support a claim against Powers either personally or under a Monell theory of liability.

---

[2]If this claim could be construed as asserting medical malpractice, it must also fail. As stated above, medical malpractice is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. In addition, plaintiff has failed to provide any expert testimony to show that any actions of defendants failed to conform to the applicable standard of care. Martasin v. Hilton Head Health Sys. L.P., 364 S.C. 430, 613 S.E.2d 795, 799 (S.C.Ct.App.2005) ( citing Gooding v. St. Francis Xavier Hosp., 326 S.C. 248, 487 S.E.2d 596, 599 (S.C.1997)).

Even assuming Snipes was deliberately indifferent to Plaintiff's medical needs, Powers could not be held liable for Snipes' violations. Furthermore, there is no allegation that Powers had any personal involvement in Plaintiff's medical treatment. Thus, summary judgment is proper on the claims asserted against Powers as well.

### D. Qualified Immunity

Defendant also asserts that he is entitled to qualified immunity in his individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to

present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298. Defendant in the present case has not transgressed any "bright lines" of constitutional conduct and, as such, is entitled to qualified immunity.

### E. State Law Claims

Plaintiff fails to submit sufficient evidence to create a genuine issue of material fact on any of his federal causes of action. Thus, it is recommended that summary judgment be granted as to those claims. If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383

U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, to the extent Plaintiff has raised any state law causes of action, the undersigned recommends that the district judge decline to retain jurisdiction over those claims.

**V.  CONCLUSION**

For the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment (Document # 48) be granted and this case be dismissed.[3]

                                                    s/Thomas E. Rogers, III
                                                    Thomas E. Rogers, III
                                                    United States Magistrate Judge

August 6, 2009
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

---

[3] Also pending are Plaintiff's three Motions for Appointment of Counsel (Documents # 47, 53, 55). Plaintiff asserts that he is unable to read or write and has to depend on other inmates to do his legal work. Plaintiff has identified no exceptional circumstances that would warrant appointment of counsel, see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975), as he has failed to show how his reliance on others has hindered his ability to prosecute this case. Indeed, Plaintiff has filed at least four other cases in this court without counsel. See 4:07-4012-HFF; 4:08-1765-HFF-TER; 4:08-2245-HFF-TER and 7:09-1918-HFF-TER. These Motions for Appointment of Counsel (Documents # 47, 53, 55) are **DENIED**.